UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES YOUNG,

      Plaintiff,

v.                                   Case No. 4:19cv526-WS-HTC

MARK INCH, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff James Young, a prisoner proceeding *pro se* and *in forma pauperis*, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983, alleging his Eighth and Fourteenth Amendment rights were violated when a bunk bed fell on Plaintiff and injured him and when he failed to receive adequate medical treatment for those injuries. ECF Doc. 1. This matter is before the Court on three (3) motions to dismiss: one filed by Mark Inch ("Inch"), one filed by Centurion of Florida, LLC ("Centurion"), and one filed by Dr. Richard Laubaugh ("Dr. Laubaugh"). ECF Docs. 22, 25, 26, respectively.

      Defendants' motions were referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(E). After reviewing the motions, Young's response (ECF Doc. 32), the record, and the relevant law, the undersigned respectfully recommends that Defendants'

motions be GRANTED and Plaintiff's claims be dismissed for Plaintiff's failure to exhaust his administrative remedies.[1]

## I.    BACKGROUND

Young is an inmate with the Florida Department of Corrections ("FDOC") currently incarcerated at Suwanee Correctional Institution.  However, during the events giving rise to the instant suit, he was incarcerated at Taylor Correctional Institution ("Taylor CI").   The complaint names eight (8) Defendants: FDOC Secretary Inch, Centurion, Dr. Laubaugh, Taylor CI Warden Shannon Varnes, Taylor CI Maintenance Supervisor Mark O'Neil[2], Taylor CI ARNP C. Kendrick, Taylor CI ARNP M. Key, and Corizon Health.  ECF Doc. 1 at 2-3.  The complaint and the documents attached thereto set forth the following factual allegations, the truth of which is accepted for purposes of this order:

Young alleges that, from 2013 to 2016, every time Warden Varnes inspected the premises, Young informed the Warden of the breaking down of the upper bunk in his cell, but the Warden responded that it was a maintenance problem and he could not do anything about it.  *Id.* at 9.  Sergeant Harmon, the dorm supervisor, filed several work orders about the bunk to maintenance supervisor O'Neil.  Also, Dorm

---

[1] As discussed further below in Section IV, because failure to exhaust is a complete bar to Plaintiff maintaining this action, the undersigned recommends that Plaintiff's claims be dismissed as to all Defendants, both served an unserved.  Defendants O'Neil and Kendrick were served after these motions were filed, and Defendants Corizon and Key have not been served.
[2] The maintenance supervisor was originally named as a John Doe defendant.  However, with FDOC assistance, Mark O'Neil was identified and substituted for John Doe.  ECF Doc. 28.

Officer Hill verbally spoke with O'Neil about the potential issue, and, whenever O'Neil came to the dorm for other maintenance concerns, Plaintiff also informed him of the issue. Despite these warnings, O'Neil failed "to take ALL work orders seriously" and failed to repair the upper bunk. *Id.* at 10.

On January 18, 2016, while Plaintiff was sitting on his lower bunk, his roommate attempted to get on his top bunk, causing the upper bunk to come loose from the wall at the foot and fall on Young. Young alleges that this caused him "serious neck and back injury." *Id.* He further alleges that, after the accident, he was transported to an outside hospital and diagnosed with "serious injury to Plaintiff's neck and back." *Id.* at 11. Young claims that, when he returned to Taylor CI, medical staff offered only Ibuprofen despite his "objectively serious medical condition [which], if left unattended, poses a substantial risk of Plaintiff living with pain in his neck and back."[3] *Id.*

On March 3, 2016, ARNP Kendrick issued Young a pass for an extra pillow and a walker for one (1) month. However, when Plaintiff explained to Kendrick that Ibuprofen was not relieving his pain, Kendrick told Young that he would have to take the Ibuprofen or nothing at all and live with the pain. Young contends that,

---

[3] Although Plaintiff briefly references an amputation of his leg in the Statement of Facts section of his complaint, he does not again refer to a leg injury or an amputation anywhere else in his complaint or the documents attached thereto.

instead, Kendrick should have scheduled him an MRI for determination of any further injury. *Id.*

On May 2, 2017, ARNP Key issued another pass for an extra pillow for one (1) year, but refused to re-issue a pass for a walker, telling Young that he needed to learn to walk without the walker. Young informed Key that he needed the walker "a while longer," but Key responded that Young must do the best he can without the walker and provided Key with a cane instead. *Id.* at 13. Key also took Plaintiff's neck brace even though there was allegedly time remaining on Young's prescription for it.[4] Young requested stronger medication than Ibuprofen because he had to do without the walker, but Key refused because she felt that Plaintiff was faking his injury. *Id.* at 14.

## II.    LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content

---

[4] On March 21, 2016, Dr. Kail (who is not named a defendant in this suit) issued Young a pass for neck support for one (1) year. ECF Doc. 1 at 11. Notably, Plaintiff alleges that Key took Plaintiff's neck brace from him more than one (1) year later, on May 2, 2017.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In deciding whether to dismiss Plaintiff's complaint, the Court must read Plaintiff's allegations in a liberal fashion.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III.    DISCUSSION

Defendants Inch, Centurion, and Laubaugh move for dismissal on several grounds, including Plaintiff's failure to exhaust his administrative remedies prior to filing suit.  *See* ECF Docs. 22, 25, 26.  Because the undersigned finds Plaintiff's failure to exhaust to be dispositive, the undersigned does not address the other grounds raised in the motions to dismiss.

### A.    Failure to Exhaust Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory precondition to suit.  *See Booth v. Churner*, 532 U.S. 731, 739 (2001).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See Booth*, 532 U.S. at 734, 741.

The requirement is not subject to waiver by a court or futility or inadequacy exceptions. *See id.* at 741 n.6. Indeed, "[r]equiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006); *see also id.* at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules"). The Court must dismiss an action if satisfied the inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

The defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although

it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374).   Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two (2) steps. *See Turner*, 541 F.3d at 1082.  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.  (citing *Bryant*, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.*  (citing *Bryant*, 530 F.3d at 1373-74, 1376).  "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*.  (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether

under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

### B.   FDOC Grievance Procedures

In *Jones*, the Supreme Court held that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself."   549 U.S. at 204.   Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust.   *Id.* at 218 ("[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion").   The applicable procedures here come from the FDOC.

The FDOC provides an internal grievance procedure for its inmates, which is codified in the Florida Administrative Code 33-103 through 33-103.018.   The grievance procedures generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary.   *See* Fla. Admin. Code 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).   For complaints regarding medical treatment, an inmate may bypass the informal grievance step.   *See* Fla. Admin. Code 33-

103.005(1). Additionally, the grievance procedures require that each grievance address only one (1) issue. Fla. Admin. Code 33-103.005(2)(b).

### C.   Plaintiff's Grievances

In support of their motions, Defendants rely upon two (2) purported appeals and seven (7) purported emergency grievances Plaintiff submitted to the Secretary. *See* ECF Doc. 22, Exhibits 1-10; ECF Doc. 25, Exhibit 1; ECF Doc. 26, Exhibit 1. In his response, Plaintiff states he "has made several attempts to fully exhaust the grievance process by filing nine (9) sep[a]rate grievances: 16-6-06232, 16-6-11007, 16-6-11008, 16-6-11177, 16-6-12482, 16-6-12483, 16-6-12484, and 16-6-12485." ECF Doc. 32. The grievances identified by Plaintiff are the same grievances and appeals to the Secretary relied upon by the Defendants (except that Plaintiff omitted Grievance No. 16-6-06228, his first appeal to the Secretary). Upon careful review of these grievances and appeals, the undersigned finds that they clearly demonstrate Plaintiff has failed to exhaust his administrative remedies and, further, that he is now time-barred from doing so.

The first document Plaintiff submitted to prison officials related to the January 18, 2016 incident was on February 1, 2016. On that day, Plaintiff submitted an "appeal" to the Office of the Secretary, which was received on February 2, 2016. ECF Doc. 25-1 at 2, 4 (Grievance No. 16-6-06228). The appeal states that (1) on January 18, a top bunk fell on Plaintiff's head and neck; (2) Plaintiff had warned

prison officials multiple times that the bunk was broken, but no one repaired it; and (3) as a result, his "head, neck was [almost] broke." ECF Doc. 25-1 at 4. He sought simply "that action be taken." *Id.* Nowhere in that appeal did Plaintiff complain about any medical treatment. Additionally, at no time prior to that appeal did Plaintiff file an informal or formal grievance to prison officials.[5]

On February 18, 2016, the Bureau of Inmate Grievance Appeals ("the Bureau") returned Plaintiff's appeal without action because it was non-compliant with FDOC grievance procedures. ECF doc. 25-1 at 5. Specifically, the Bureau advised Plaintiff that the FDOC rules require that Plaintiff first submit a grievance at the institutional level before filing an appeal and that he had either not done so or had not provided a copy of that grievance and had not provided a "valid or acceptable reason for not following the rules." *Id.* The Bureau further responded that, based on a review of the appeal, the grievance should be initiated at the informal level (presumably because it did not contain a complaint regarding medical needs). *Id.*

Instead of initiating an informal grievance, however, on February 2, 2016, Plaintiff submitted another "appeal" to the Office of the Secretary. ECF Doc. 25-1

---

[5] Although Plaintiff vaguely notes that he also "initiated the informal grievance process, both written and oral," ECF Doc. 32 at 2, he does not demonstrate, nor even allege, that he exhausted his administrative remedies at the institutional level. Indeed, as discussed further below, Plaintiff specifically states that all of his grievances were returned without action for noncompliance with FDOC procedures.

at 2, 6 (Grievance No. 16-6-06232). Unlike his first appeal, in this second appeal, Plaintiff alleged pain resulting from the bunk falling on him on January 18 for which he had received inadequate medical care.[6] On February 18, 2016, the Bureau again returned Plaintiff's appeal without action because it was non-compliant with FDOC grievance procedures. Specifically, Plaintiff had not provided a copy of a formal grievance filed at the institutional level, if any, or a reason for bypassing that requirement. ECF Doc. 25-1 at 7. The Bureau gave Plaintiff an additional fifteen (15) days to resubmit his grievance at his institution in compliance with the FDOC rules. Plaintiff, however, did not do so. *Id.*

Instead, on March 9, 2016, Plaintiff submitted three (3) "emergency" grievances to the Office of the Secretary. ECF Doc. 25-1 at 2-3, 8-14 (Grievance Nos. 16-6-11007, 16-6-11008, and 16-6-11177). Emergency grievances, if proper, may be filed directly with the warden's office or with the Office of the Secretary. Fla. Admin. Code. 33-103.006(3)(a). Grievance No. 16-6-11007 states that, because Taylor CI officials failed to keep all beds properly maintained, Plaintiff suffered from temporary loss of vision, head trauma, "body into shock," and "uncontrollable nerve shaking." *Id.* at 8. Grievance No. 16-6-11008 states that, because Taylor CI

---

[6] Although Plaintiff states that "medical staff [did not do their] job properly," he notes that he was immediately seen by medical staff; that he was given a support neck brace and strapped to a stretcher; that, upon arriving at the main medical unit, he was given two (2) shots for his pain; that he was immediately sent to the hospital for x-rays; and that he was given ibuprofen. ECF Doc. 25-1 at 6.

officials failed to keep all beds properly maintained, they subjected Plaintiff to, *inter alia*, death, murder, assault, torture, torment, and various health problems. *Id.* at 10. As relief, Plaintiff sought only "outside court litigation." *Id.* at 11.

On March 15, 2016, the Bureau returned both of these grievances without action, finding that they were not grievances of an emergency nature and that, therefore, the rules required Plaintiff to submit his grievances at the institution level. ECF Doc. 25-1 at 9, 12. Plaintiff, however, had either not done so or had not provided a copy of those grievances and had not provided a valid or acceptable reason for not following the rules. *Id.* The Bureau's response further directed that, if Plaintiff was still within the allowable time frame for processing a grievance, then he may resubmit that grievance to his current institution in compliance with the FDOC rules. *Id.* By this date, however, Plaintiff's time for filing a formal grievance had expired. *See Fla*. Admin. Code 33-103.011(1)(b) (formal grievances generally must be received within fifteen (15) days of when the incident or action being grieved occurred.).

In his third March 9, 2016 "emergency" grievance (Grievance No. 16-6-11177), Plaintiff states that he was subjected to "bed-murder," "bed torture," "bed assault," and "bed torment" and that "[t]he medical department failed to overall correct the medical issues," such as Plaintiff's temporary vision loss, head trauma,

shock, and nerve shaking. *Id.* at 13. As relief, Plaintiff again sought only outside court litigation. *Id.*

On March 17, 2016, the Bureau also returned this grievance to Plaintiff without action, finding, for a third time, that Plaintiff's grievance was not a grievance of an emergency nature and, thus, was not submitted at the appropriate level. ECF Doc. 25-1 at 15. Specifically, the Bureau determined that Plaintiff's grievance should have been submitted at the institutional level. *Id.* This time, however, the Bureau explicitly gave Plaintiff an additional fifteen (15) days to resubmit his grievance to his current institution in compliance with the rules. *Id.* Once again, Plaintiff did not comply.

Instead, on or about March 19, 2016, Plaintiff submitted four (4) more "emergency" grievances to the Office of the Secretary, which were received on March 23, 2016 (Grievance Nos. 16-6-2482, 16-6-2483, 16-6-2484, and 16-6-12485). ECF Doc. 25-1 at 3. The Bureau returned each of those grievances as non-compliant because Plaintiff's "grievance at the institutional level was determined to be in non-compliance with the requirements of the rules."[7] ECF Doc. 25-1 at 20, 26, 37, 51. The institutional grievances to which the Bureau referred were attached

---

[7] The Bureau also found that none of the March 19 grievances were grievances of an emergency nature.

to Plaintiff's March 19 "emergency" grievances to the Secretary, are all dated February 27, 2016, and are also titled "emergency grievance."

In Formal Grievance No. 1603-218-041, Plaintiff grieves that he told Taylor CI officials about the faulty bunk and that they violated the Constitution when they failed to fix the bunk. ECF Doc. 25-1 at 21. This grievance, however, was deficient in several ways. First, it was not timely filed, as formal grievances generally must be received within fifteen (15) days of when the incident or action being grieved occurred. Fla. Admin. Code 33-103.011(1)(b). In this instance, the action being grieved occurred on January 18, 2016, and the formal grievance was not filed until February 27. Second, the grievance wholly failed to mention Plaintiff's medical treatment or lack thereof and, therefore, should have been filed at the informal grievance level. Subsequently, the grievance was returned on March 9, 2016 without action at the institutional level because the grievance was improperly labeled an "emergency" and because it sought relief outside the FDOC's control – namely, Plaintiff's request for "outside court litigation, which is not something FDOC can help you with." *Id.* at 23, 60.

In Formal Grievance No. 1603-218-036, Plaintiff grieves to the Warden that Taylor CI officials acted with deliberate indifference because a "bed [fell] on [him]." ECF Doc. 25-1 at 27. He also alleges, with no context or factual support, "medical inadequate treatment." *Id.* As relief, he again sought "only outside court litigation."

*Id.*  For the same reasons set forth above, on March 9, 2016, this formal grievance was also returned without action at the institutional level.  *Id.* at 29, 57.

In the third institutional "emergency grievance" Plaintiff submitted to the Warden of Taylor CI, Formal Grievance No. 1603-218-042, Plaintiff alleges that Taylor CI officials were put on notice of the faulty bunk and failed to repair it, thus causing it to fall on him.  ECF Doc. 25-1 at 38.  As relief, he again sought "only outside court litigation."  *Id.* at 39.  For the same reasons set forth above, on March 9, 2016, Plaintiff's formal grievance was again returned without action at the institutional level.  *Id.* at 40, 54.

### D.    Analysis

Aside from the substantive issues with Plaintiff's grievances[8], the foregoing grievances demonstrate that Plaintiff failed to exhaust his administrative remedies by failing to comply with FDOC grievance procedures.  As set forth above, Plaintiff failed to comply at both the institutional level and the appeals level.  Plaintiff clearly had the means and opportunity to file grievances, and the multiple grievances he did file demonstrate that he generally knew how the grievance procedures worked.  Moreover, Plaintiff was advised repeatedly that he must file non-emergency, non-

---

[8] For example, among other issues, nowhere in Plaintiff's grievances does Plaintiff allege an unlawful custom or policy to deny or delay adequate medical care of inmates, as he does in his complaint against Corizon.  Defendants also argue that Plaintiff's grievances fail to adequately notify prison officials of the medical conduct he complains about here.

medical grievances at the informal grievance level; that he must file non-emergency medical grievances at the formal grievance level; and that his allegations, which he more or less repeated throughout his nine (9) appeals and grievances to the Office of the Secretary, did not state an emergency claim. Yet, at no time did Plaintiff comply with these directives by filing a timely informal or formal grievance at Taylor CI. Rather, he continued to submit purported "emergency" grievances, solely seeking relief the FDOC could not provide.

Plaintiff admits in his 3-page response that "all grievances were stamped 'No Action Taken' 'Filed at wrong level.'" ECF Doc. 32 at 2. A grievance that is returned for failure to comply, such as Plaintiff's grievances, cannot serve as an exhaustion of administrative remedies. *See Newman v. Izuegbu*, 2016 WL 1598661, at *6 (N.D. Fla. Jan. 12, 2016) ("[a] grievance that is returned without action because the grievance was not in compliance with the grievance procedures is insufficient to show exhaustion of administrative remedies") (citing *Joseph v. Gorman*, 2012 WL 4089012, at *6 (N.D. Fla. Mar. 12, 2012) (noting that a response that returns the grievance without action or finding it to be noncompliant does not exhaust administrative remedies)); *Wallace v. Jones*, 2018 WL 4145929, at *3 (M.D. Fla. Aug. 30, 2018) ("[i]f a grievance is returned without action, the inmate has failed to 'properly' complete the grievance process") (citing *Bryant*, 530 F.3d at 1379).

Moreover, this Court cannot disregard the Secretary's or the Bureau's determination that a grievance is non-compliant with FDOC procedures. *See Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (an "untimely grievance that is rejected as such by prison officials" "does not satisfy the exhaustion requirement of the PLRA"); *see also Mraz v. Pagan-Delgado*, 2018 WL 4326864, at *3 (N.D. Fla. Sept. 29, 2018) (a court may not disregard a timeliness bar that the Secretary's Office has decided to enforce).

Plaintiff does not dispute that the grievances attached to Defendants' motions are the relevant grievances, nor does he allege that other grievances exist which demonstrate exhaustion of his administrative remedies. Although he states that he "initiated the informal grievance process, both written and oral," this statement is purely conclusory and does not demonstrate exhaustion. Plaintiff provides no evidence of such informal grievances and no facts supporting their existence, such as the date of the alleged grievances or what was contained therein. *See* ECF Doc. 32 at 2. Similarly, although Plaintiff alleges the grievance procedure is "[inadequate] to mediate resolutions to Plaintiff[']s allegations," ECF Doc. 32 at 2, the Court has no discretion to waive the exhaustion requirement based on the grievance procedure being futile or inadequate. *See Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998) ("the courts cannot simply waive [mandatory exhaustion] requirements when they determine they are futile or inadequate"). Thus,

applying the *Turner* analysis, the undersigned finds at the first step that Plaintiff failed to exhaust his administrative remedies.

Additionally, because Plaintiff's claims arise out of events that occurred, at the latest, in May of 2017, and the FDOC procedures require that informal grievances be received within twenty (20) days of the incident and formal grievances be received within fifteen (15) days of the incident, Plaintiff's claims should be dismissed **with prejudice** because Plaintiff cannot now cure his failure to exhaust. *See Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (citing *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995); *see Bryant*, 530 F.3d at 1375, n. 11 (failure to exhaust can result in a dismissal with prejudice when administrative remedies are time barred).

## IV.    *SUA SPONTE* DISMISSAL AS TO OTHER DEFENDANTS

As stated above, Young names eight (8) defendants in this action. Since the filing of the instant motions to dismiss, Defendants O'Neil and Kendrick have been served. Although summonses were issued to Defendants Key and Corizon, they have yet to be served. Because there is no dispute that all of Plaintiff's submitted grievances were non-compliant with FDOC procedures, and because a failure to exhaust would bar Plaintiff's claims against all named defendants, the undersigned also recommends a *sua sponte* dismissal of Plaintiff claims as to the other remaining defendants, both served and unserved. *See Escobar v. Crosby*, 363 F. Supp. 2d 1361,

1366 (S.D. Fla. 2005) (noting dismissal of prisoner's claims against unserved defendants was appropriate based on both the prisoner's failure to effect timely service and his failure to exhaust administrative remedies).

"A district court can only dismiss an action on its own motion as long as the procedure employed is fair … To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). Thus, before the Court dismisses this action, the undersigned recognizes that the parties must be given notice and an opportunity to be heard. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018) (holding that district court should have given parties notice and opportunity to be heard prior to *sua sponte* dismissal of state law claims after determination of lack of jurisdiction over federal claims).

That notice and opportunity to be heard will be provided through the procedures for filing objections to this Report and Recommendation. *See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349*, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); *Anderson v. Dunbar Armored, Inc.*, 678 F.

Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that report and recommendation served as notice that claims would be *sua sponte* dismissed).

As indicated below, the parties will have an opportunity to present their objections to the undersigned's findings and determinations to the District Judge for a *de novo* review prior to the entry of a dismissal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *see also Glover v. Williams*, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond). Thus, the undersigned finds that a *sua sponte* dismissal is appropriate in this case as to the nonmoving defendants.

## V.    CONCLUSION

Accordingly, it is respectfully RECOMMENDED that:

1.    Defendants' Motions to Dismiss (ECF Docs. 22, 25, 26) be GRANTED and Plaintiff's complaint (ECF Doc. 1) be DISMISSED for Plaintiff's failure to properly exhaust his administrative remedies.

2.    Plaintiff's complaint be DISMISSED as to all named Defendants, both served and unserved.

3.    The clerk be directed to close this file.

At Pensacola, Florida, this 4th day of June, 2020.


*s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.